IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREGORY HOWARD LADNER,<br><br>    Plaintiff,<br><br>  v.<br><br>MEGAN A. MAIER, et al.,<br><br>    Defendants. | CIVIL ACTION<br>NO. 11-0854 |

**OPINION**

**Slomsky, J.**                                                                                                      **December 10, 2012**

**I.    INTRODUCTION**

Plaintiff Gregory Howard Ladner is a federal prisoner. In 2005, he was convicted of making false statements to a federal firearms licensee. In January 2006, he was sentenced to eighteen months imprisonment and was ordered to report to a federal prison thirty days later to begin serving his sentence. He failed to report as ordered, and instead obtained a passport which he used to flee the United States. In May 2009, Plaintiff was arrested in the Philippines after a woman reported him to the police for sexual abuse. After discovering he was wanted in the United States, Philippine authorities assisted in his deportation. Upon being returned, he was charged with several offenses, including the failure to surrender for service of a sentence, in violation of 18 U.S.C. §§ 3146(a)(2) and (b)(1)(A)(ii), giving a false statement in an application for and use of a passport, in violation of 18 U.S.C. § 1542, and escape, in violation of 18 U.S.C. § 751(a). He pled guilty to the offense of failure to surrender for service of a sentence and agreed to and signed a waiver of certain appellate rights as part of his guilty plea agreement. The remaining two charges were dismissed.

1

Before sentencing, a Presentence Investigation Report ("the Presentence Report") was prepared by U.S. Probation Officer Megan A. Maier. Her superior in the Probation Office was Supervising U.S. Probation Officer Sandra Luehrs-Shaw. A sentencing hearing was held in August 2010. The sentencing judge, Plaintiff, and counsel for the parties reviewed the Presentence Report. Plaintiff was sentenced to an additional term of fourteen months imprisonment. He has now filed the instant civil rights suit against the two probation officers, alleging that certain information contained in the Presentence Report violated his constitutional rights.[1] Defendants have filed a Motion to Dismiss the Complaint and have moved to strike a filing by Plaintiff that appears to amend the Complaint. For reasons that follow, the Court will grant the Motion to Dismiss and deny the Motion to Strike.

## II. BACKGROUND

### A. Procedural History

On February 3, 2011, Plaintiff filed an application to proceed in forma pauperis in this case (Doc. No. 1), which was denied without prejudice on February 14, 2011 for failure to pay the filing fee (Doc. No. 2).[2] On March 4, 2011, Plaintiff filed a notice stating that he wished to move forward with the case and to pay the required filing fee. (Doc. No. 3.) On March 7, 2011, he filed a "Motion to Amend" the Complaint, which the Court considered to be a Motion for

---

[1] In various filings, Plaintiff attempts to state a claim under 42 U.S.C. § 1983. This statute, however, is not applicable to Defendants, who are federal employees. Plaintiff's civil rights claims may be brought against Defendants pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) (holding that an implied cause of action exists against federal officials for alleged violations of constitutional rights). For purposes of this case and the instant Opinion, the Court will construe Plaintiff's claims as having been brought pursuant to Bivens.

[2] An action brought in forma pauperis is governed by 28 U.S.C. § 1915. The Court's Order dated February 14, 2011 explained that upon review of Plaintiff's financial statement which is required to be filed under the statute, Plaintiff would be assessed an initial filing fee of $2.25. He was permitted to pay this initial filing fee, if he wished, and prosecute the case.

2

Leave to Amend the Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2).[3] (Doc. No. 4.) On March 14, 2011, the Court granted Plaintiff leave to proceed in forma pauperis, ordered the Complaint (Doc. No. 6) to be filed, and granted him leave to amend the Complaint within thirty days. (Doc. No. 5.)

After being granted leave to amend the Complaint, Plaintiff filed four documents between March 24, 2011 and September 7, 2012 which the Court will construe as motions to amend the Complaint. (See Doc. No. 7 ("Correctional Notice," filed March 24, 2011);[4] Doc. No. 9 ("Amended Title 28 U.S.C. § 1331 for Fraud upon the U.S. Courts in Violation of my 5th/6th Amendments," filed May 27, 2011);[5] Doc. No. 10 ("Amendment to Relief Sought Under Title 28 U.S.C. § 1331," filed September 7, 2011);[6] and Doc. No. 21 ("Amendment to my Complaint in Filed Document No. 4 for to [sic] add a 5th Amendment Violation of my Due Process of Law," filed September 7, 2012).)[7]

The Court will construe these documents, however imprecisely titled and drafted, as amendments to the Complaint because, as a pro se litigant, Plaintiff is entitled to deference in his filings. See United States v. Bradley, No. 10-3106, 2012 WL 5985103, at n.1 (3d Cir. Nov. 30, 2012) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972) (pro se complaints are held "to less

---

[3] As of March 7, 2011, a Complaint had not yet been filed.

[4] Document 7 is a single paragraph correcting certain dates listed in the Complaint.

[5] Document 9 appears to allege a claim of fraud against Defendants based on facts similar to those alleged in the Complaint and, as discussed infra, also attempts to join a federal prosecutor as a defendant.

[6] Document 10 is also a single paragraph stating, in pertinent part: "I did not state the actual monetary amount to the courts that I was seeking. I now wish to state and seek the actual monetary amount of $10 (Ten) Million Dollars." (Doc. No. 10 (emphasis in original).)

[7] Document 21 alleges a Fifth Amendment due process claim against Defendants on the basis of facts similar to those alleged in the Complaint.

stringent standards than formal pleadings drafted by lawyers")).  Even though Plaintiff has filed several of these documents in violation of a Federal Rule of Civil Procedure that requires leave of court before filing, see Federal Rule of Civil Procedure 15(a)(2), the Court will still consider them to be amendments to the Complaint because of the deference requirement.

On July 6, 2012, Defendants filed a Motion to Dismiss the Amended Complaint.  (Doc. No. 17.)  On September 7, 2012, Plaintiff filed a response to the Motion to Dismiss.  (Doc. No. 20.)  On September 21, 2012, Defendants filed a Motion to Strike Plaintiff's Amended Complaint (Doc. Nos. 24–25), referring to Document 21 in the record, which is noted above and being considered part of the Amended Complaint.  The Motion to Strike will be denied because, as previously mentioned, complaints filed by pro se litigants are held to less stringent standards than filings by lawyers.

    **B.**    **Statement Of Facts**

On January 10, 2006, Plaintiff was sentenced to eighteen months imprisonment for knowingly making false statements to a federal firearms licensee.  (Doc. No. 17 at 5.)  He was allowed to remain free on bail, and ordered to self-surrender on February 9, 2006 to serve his sentence.  (Doc. No. 17–1 at 3.)  Plaintiff used this opportunity to obtain a passport and flee the United States.  (Id.)  In May 2009, he was arrested in the Philippines after a woman reported him for sexual abuse.  (Id.)  During the investigation into that crime, Philippine police discovered that he was a fugitive wanted in the United States.  Philippine authorities then assisted in the deportation of Plaintiff to Pennsylvania.  (Id.)

After being returned to the Eastern District of Pennsylvania, Plaintiff agreed to plead guilty to failure to surrender for service of his sentence, in violation of 18 U.S.C. § 3146(a)(2). (Doc. No. 17 at 6.)  As part of a plea agreement, he agreed to waive certain rights either in a

4

direct appeal or a collateral attack of his sentence. (Id.) Before sentencing, Plaintiff, his attorney, the prosecutor, and the district judge reviewed draft copies of the Presentence Report. Id. The Report was prepared by Defendant Megan A. Maier and approved by her supervisor, Defendant Sandra Luehrs-Shaw. (Doc. No. 17–3 at 23.)

In a letter dated July 22, 2010, Plaintiff's attorney objected to four factual matters in the Presentence Report. They are: (1) a reference to Plaintiff's alleged sexual abuse of his "girlfriend" in the Philippines — an incident which Plaintiff denied — on the grounds that the allegation was hearsay and not subject to cross examination; (2) a failure to mention Plaintiff's receipt of a GED, a high school equivalency diploma; (3) a statement that Plaintiff had a prior conviction for aggravated battery in Illinois, which Plaintiff contended was for battery only; and (4) an implication that Plaintiff had lied about his ability to speak a dialect of the Filipino language. (Doc. No. 17–2 at 2–3.)

On August 16, 2010, Plaintiff appeared for sentencing and was represented by counsel. (Doc. No. 17 at 6.) During the hearing, Plaintiff's attorney only objected to the accuracy of the information in the Presentence Report about the alleged sexual abuse in the Philippines. (Id.) This objection was noted in the Presentence Report. (Doc. No. 17–3 at 22.) During the sentencing hearing, the judge heard oral argument on the objection, and ultimately ruled that the alleged sexual misconduct should not be removed from the Presentence Report. (Doc. No. 17 at 6.) The judge then sentenced Plaintiff to fourteen months imprisonment, three years supervised release, a $1,000 fine, and a $100 special assessment. (Id.)

Despite the appellate waiver in the plea agreement, Plaintiff appealed on the sole issue that the district court "impermissibly relied on an uncorroborated police report from the Philippines in imposing a sentence at the high end of the advisory United States Sentencing

5

Guidelines range." (Doc. No. 17–1 at 2.) The remaining three objections were not pursued either at sentencing or on appeal. (Id.) The court of appeals affirmed the judgment and sentence of the district court and enforced the appellate waiver. (Doc. No. 17–1.)

In this case, the Complaint filed by Plaintiff alleges that Defendants Maier and Leuhrs-Shaw violated his civil rights, including his right to due process of law, by alleging that Defendants:

> willfully and knowingly commited [sic] strong discrimination, made serious false statements with vindictiveness, prejudice, malicious intent, and commited [sic] obstruction of justice against me in their presentence investigation reports dated 7/8/2010 and 8/5/2010 to the federal sentencing judge that caused me much mental pain, suffering, stress, depression, shame, and damages of my good character.

(Doc. No. 6 at 3.) He seeks:

> relief from the effects of the serious false statements, and discrimination of the probations [sic] Presentence Report against me. I request that the civil courts will hold the defendants in this case accountable for their unlawful actions, and to see to it that they will never do this again to no one else. And impose a very stiff monetary fine on them, and I'm personally sueing [sic] for the maximum money damages.

(Id. at 4.)

The Complaint also contains a series of allegations under the title "Affidavit/Complaint."[8] (Id. at 5–19.) Plaintiff alleges that Defendants made prejudicial and false statements against him in the Presentence Report. Plaintiff also contends that Defendant Maier "was very rude, and vindictive toward me on this second case because I fail [sic] to surrender myself." (Id. at 8.) He alleges that she wrongfully included information in the Presentence Report pertaining to Defendant's alcohol abuse, which had the effect of requiring him to undergo a drug and alcohol abuse program while in custody. (Id.)

---

[8] Some of the allegations appear to be unrelated to this lawsuit, and are merely denials of facts that led to the 2006 underlying conviction for making a false statement to a federal firearms licensee. (Doc. No. 6 at 6–7.)

6

He also denies the facts surrounding his encounter and alleged sexual abuse of his "girlfriend" in the Philippines. (Id. at 9–11.) To refute the allegation of sexual abuse, Plaintiff avers that "[t]his so-called 'girlfriend' only knew the half [sic] of my first name which is "GREG," she never knew my date of birth, my last name, or my S.S. number." (Id. at 10.) He also alleges that "she went and made her false allegations to the U.S. Embassy only, and never to the police" (id.); that "I never saw or was visited by any policeman there in the Philippines" (id. at 11); that immigration officials in the Philippines told him "that I can come back in the Philippines after that [sic] I'm done with this U.S. case problem" (id.); and that "I only first heard about these false allegations from Megan A. Maier the defendant in this civil case and I was shock [sic] to learn this from her" (id.). He claims that Defendant Maier accused him of rape, which he denies, and that "Mrs. Maier is lying, vindictive, hateful with malicious intent and very prejudice [sic] toward me." (Id. at 12 (emphasis in original).)

He also claims that because the Presentence Report did not include the GED that he earned, the prison has "force [sic] me under the threat of punishment, and the lost [sic] of good conduct time that I must go to the G.E.D. classes for [sic] to get it." (Id. at 13.) He claims he has "been shamed, humiliated, disgraced, and verbally abused by this prison school G.E.D. staff, and I was made to take the pre-G.E.D. tests so [sic] for them to determine of [sic] what grade level that I start on for the G.E.D. classes. I had suffered all of this because of Mrs. Maier [sic] brutal prejudice, and discrimination against me." (Id.)

Plaintiff alleges that Defendant Maier also "didn't bother to check into the Illinois State Records that was on me in their files" to verify that Plaintiff's prior conviction was for battery, as he contends, rather than aggravated battery. (Id. at 14.) He asserts that "Defendant knew what she was doing here, I believed that she did this on purpose because she were [sic] being

7

vindictive, malicious, and discriminating against me.  The sentencing judge . . . believed her report over my objections, and did consider her false report on me doing [sic] my sentencing hearing."[9]  (Id.)

He also insists that, despite what Defendant Maier included in the Presentence Report, he speaks a dialect of Filipino, of which there are many dialects.  Furthermore, Plaintiff contends that:

> by Mrs. Maier [sic] discrimination, prejudice, vindictiveness, and malicious intent had recommended a fine to the sentencing judge against me of $1,000 in which he did imposed [sic] upon me.  My prison income is only $12.00 per month and upon my release I will be homeless, unemployed, and with no money.  The defendant Mrs. Maier know [sic] all of this.  Paying this fine of $1,000 is a part of my probation condition and if I fail to pay the monthly payments of $100, then my probation can be revoked and I can be sent to jail for up to 2 years.  The defendant knows this can happen.  I believe she had set me up for this.

(Id. at 15–16 (emphasis in original).)  He argues that Defendant Maier attempted to commit obstruction of justice "by recommending that I pay a large fine in my case . . . [and] by making false claims in her presentence investigations report that was contrary to the order, justice, and interest of the honorable court as all that is stated above on my Complaint."  (Id. at 17.)

The Amended Complaint adds a claim for fraud based upon facts similar to those alleged in the Complaint.[10]  It also asserts a claim for violation of his due process rights under the Fifth Amendment to the U.S. Constitution, also on facts similar to those alleged in the Complaint.

---

[9] As stated supra, the only objection listed in the Presentence Report pertains to his alleged sexual misconduct in the Philippines.

[10] Document 9 attempts to add Assistant U.S. Attorney Joseph A. LaBar, Esquire, as a Defendant.  LaBar prosecuted Plaintiff for failure to surrender to begin serving his sentence.  Plaintiff alleges that LaBar defrauded the sentencing court by stating on the record that he plead guilty to felony aggravated battery in Illinois, but Plaintiff claims he was instead convicted of misdemeanor battery following a bench trial.  (Doc. No. 9 at 3.)  LaBar, however, was never joined to this case as a defendant.

On January 24, 2012, the Court ordered the U.S. Marshals Service to serve "all Defendants with the Amended Complaint (Doc. No. 9) and the Amendment to Relief Sought (Doc. No. 10)."  As of the date of the filing of this Opinion, Joseph A. LaBar, Esquire, is not listed as a Defendant on

### III.     STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in the Supreme Court's Opinion Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678; see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Township set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss. 629 F.3d 121, 130 (3d Cir. 2010); see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (applying the principles of Iqbal and articulating the 12(b)(6) analysis as a two-part test).

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

---

the docket, and, as noted, has not been served with the Amended Complaint. Plaintiff has not pursued service on LaBar, despite the passage of eighteen months since the filing of Document 9. Additionally, Plaintiff's last attempt to amend the pleadings in Document 21 makes no mention of LaBar. For this reason, the Court will consider any claims against LaBar to be abandoned for failure to serve him with process.

Even if the claims against prosecutor LaBar were not abandoned, they would fail as a matter of law. "Absolute immunity attaches to all actions performed [by a prosecutor] in a 'quasi-judicial' role. This includes activity taken while in court, such as the presentation of evidence or legal argument . . . ." Giuffre v. Bissell, 31 F.3d 1241, 1251 (3d Cir. 1994) (citing Imbler v. Pachtman, 424 U.S. 409, 430 (1976)) (internal citation omitted). Thus, even if LaBar had been properly joined in this action as a defendant, Plaintiff's claims would fail because his allegations against LaBar are only in his quasi-judicial role — that is, in presenting evidence and arguments to a district judge during a sentencing hearing. Accordingly, LaBar has immunity and any complaint filed against him would be dismissed.

Santiago, 629 F.3d at 130 (quoting Iqbal, 556 U.S. at 675, 679) (internal citations omitted). "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler, 578 F.3d at 210–11 (citing Phillips v. County of Allegheny, 515 F.3d 224, 234–35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'shown' — 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration omitted). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

### IV.  ANALYSIS

#### A.  Plaintiff's Lawsuit Is An Impermissible Challenge To His Criminal Sentence

First, Plaintiff's lawsuit is barred because it is an impermissible collateral attack on his criminal sentence. In Heck v. Humphrey, 512 U.S. 477 (1994), the U.S. Supreme Court held that a prisoner in state custody could not bring an action for monetary damages under 42 U.S.C. § 1983 challenging state actions related to a criminal sentence without first proving that the sentence had been reversed or invalidated on appeal. Heck, 512 U.S. at 487. Without such a showing, any claim for damages that calls into question the validity of a sentence must be dismissed by a district court. Id. The Court stated that this holding was consistent with the long-standing principle that "civil tort actions are not appropriate vehicles for challenging the validity

of outstanding criminal judgments." Id. at 486.  Moreover, the holding in Heck v. Humphrey applies equally to a federal defendant attempting to challenge his sentence in a Bivens action. Lora-Pena v. Fed. Bureau of Investigation, 529 F.3d 503, 506 n.2 (3d Cir. 2008) ("Although Heck involved a § 1983 action by a state prisoner, the reasoning in Heck has been applied to bar Bivens claims" (citing Williams v. Hill, 74 F.3d 1339, 1341 (D.C. Cir. 1996).).

Plaintiff is attempting to do in this case what Heck v. Humphrey prevents — an impermissible challenge in a civil rights case to a sentence imposed in a criminal case.  Plaintiff contends here that the "fraud" and "defamation" perpetrated by Defendants in the allegedly inaccurate Report influenced the sentencing judge, which in turn caused him $10 million in damages.  He alleges in the Amended Complaint that the allegedly false accusations in the Presentence Report "were completely false against me and a frame-up." (Doc. No. 9 at 2.)  In reality, although Plaintiff has pleaded a multi-prong attack on the legitimacy of his sentence, his arguments mirror, in part, his attorney's objections to the Presentence Report listed in the July 22, 2010 letter.  He is simply attempting to rehash arguments that were presented both to the district judge during sentencing and before the Third Circuit on appeal.

Plaintiff has already unsuccessfully advanced a due process claim before the court of appeals.  The Third Circuit ruled that "[i]n the absence of any indication in the record that the District Court relied on the uncorroborated details of the Philippine police report at sentencing, we hold that Ladner's due process argument lacks merit." (Doc. No. 17–1 at 10.)  The Third Circuit also affirmed the district court and enforced the appellate waiver.  In short, the current due process and other claims made in this case amount to nothing more than another attempt to appeal his sentence under the guise of a civil lawsuit, which this Court has neither jurisdiction

nor authority to hear. The reasoning of Heck bars this collateral attack on his sentence, which is presented to the Court through the veneer of a civil action.

### B. Defendants Are Immune From Suit

Second, Plaintiff's claims against Defendants also fail because as employees of the U.S. Probation Office, they are protected by qualified immunity. A government actor is shielded from liability unless a plaintiff establishes a violation of a constitutional right. This important policy protects public officials from harassment by litigation as they conduct their duties. Anderson v. Creighton, 483 U.S. 635, 638 (1987). The U.S. Supreme Court has established a two-step analysis to determine if a government official is entitled to qualified immunity:

> First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.

Pearson v. Callahan, 555 U.S. 223, 232 (2009) (internal citations omitted). Here, Plaintiff has not satisfied the first step, rendering an analysis under the second step unnecessary.

An alleged constitutional right must be "particularized." Brosseau v. Haugen, 543 U.S. 194, 199 (2004) (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)). A plaintiff has an obligation to allege specific facts detailing the constitutional right that has been violated. Here, Plaintiff has not met this requirement of specificity. He alleges broad, vague claims against Defendants, such as Defendants "willfully and knowingly commited [sic] strong discrimination, made serious false statements with vindictiveness, prejudice, malicious intent, and commited [sic] obstruction of justice against me." (Doc. No. 6 at 3.) These broad claims are not specific enough to raise an inference of a constitutional violation. For instance, Plaintiff's claims cannot be construed to allege that he has received disparate treatment by Defendants because he is part

of a protected class, that he was treated differently than others based on an immutable characteristic, or any other grounds for a discrimination claim.  Although he contends that Defendants included the allegation of sexual abuse in the Presentence Report out of sheer vindictiveness or spite, this allegation is insufficient to establish a claim of discrimination.  Moreover, no due process violation arises from the facts alleged here.  His claim that false statements were made against him in regard to the sexual abuse of his girlfriend, his GED, the case involving the battery, and his Filipino dialect, which at best are allegations that Defendants defamed him, does not rise to a constitutional violation.  An "interest in reputation alone" does not amount to a constitutionally protected interest.  Paul v. Davis, 424 U.S. 693, 711 (1976).

In the Amended Complaint, Plaintiff asserts a claim of fraud upon the court through broad accusations of misrepresentations and perjury made to the sentencing judge, in violation of his 5th and 6th Amendment rights.  (See Doc. No. 9 at 4 ("I was told by the U.S. Court that — A false statement of a material fact is perjury" (emphasis in original)).)  However, he does not describe how this alleged perjury has violated a constitutional right, or how he has standing to bring a civil cause of action on the basis of the alleged perjury.

Because Plaintiff has not alleged with specificity that any constitutional right was violated by Defendants, they are protected from suit by qualified immunity.  Thus, Defendants are entitled to dismissal of the case, as their "entitlement is an immunity from suit rather than a mere defense to liability."  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (emphasis omitted).

C.     **Federal Tort Claims Act**

Third, Defendants also contend that Plaintiff's claims are barred because he has not complied with a Federal Tort Claims Act (FTCA) provision requiring that "the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been

finally denied by the agency in writing and sent by certified or registered mail" before filing suit in federal court.  28 U.S.C. § 2675.  Although it appears this argument may have merit, applying it would require relying upon (1) the Declaration of Laura E. Cress from the Administrative Office of the U.S. Courts, stating that Plaintiff has not filed an administrative claim with that office as required under the FTCA (Doc. No. 17–4); and (2) the Certification of Scope of Employment by Zane David Memeger, the U.S. Attorney in the District where Defendants are probation officers, stating that they are both federal employees as defined under the FTCA (Doc. No. 17–5).

> Federal Rule of Civil Procedure 12(d) provides:
>
> (d) Result of Presenting Matters Outside the Pleadings.  If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

When reviewing a motion to dismiss, a district court "can consider 'a document integral to or explicitly relied upon in the complaint.'"  In re Rockefeller Ctr. Props., Inc. Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)) (emphasis omitted).  A district court may also review "an 'undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'"  In re Rockefeller Ctr. Props., Inc., 184 F.3d 280, 287 (quoting Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

The Court will decline to take judicial notice of the facts contained within the declaration from Laura Cress and the certification from U.S. Attorney Memeger regarding Defendants' status as federal employees.  Although these documents are arguably appropriate for judicial notice because they disclose facts that are discoverable by the public, it is not entirely clear how easily

14

one could access this information.  See <u>Pension Ben. Guar. Corp.</u>, 998 F.2d at 1197 (comparing "unqualified" public access to documents with documents accessible via the Freedom of Information Act, and holding that "a document is not a public record for purposes of a motion to dismiss solely because it might be subject to disclosure under [the Freedom of Information Act]")

The Court is not convinced it may take judicial notice of these documents without converting Defendants' Motion to Dismiss into a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 12(d), which the Court declines to do.  In addition, because Plaintiff's case is without merit for the two reasons discussed above, converting this case into one for summary judgment just to obtain a ruling on the FTCA issue would result in an unnecessary burden on judicial resources.  For these reasons, the FTCA violation asserted by Defendants at the motion to dismiss stage will not be considered.

## V.     CONCLUSION

Accordingly, Defendants' Motion to Dismiss the Amended Complaint (Doc. No. 17) will be granted.  Defendants' Motion to Strike Plaintiff's Amended Complaint at No. 21 (Doc. No. 24) will be denied.  An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GREGORY HOWARD LADNER,

    Plaintiff,

v.

MEGAN A. MAIER, et al.,

    Defendants.

CIVIL ACTION
NO. 11-0854

## ORDER

**AND NOW**, this 10th day of December 2012, upon consideration of Defendants' Motion to Dismiss (Doc. No. 17), Plaintiff's "Motion in Response to Defendants' Motion to Dismiss Plaintiff's Complaint" (Doc. No. 20), and Defendants' Motion to Strike Plaintiff's Amended Complaint Docketed at No. 21 (Doc. No. 24), it is **ORDERED** as follows:

1. Defendants' Motion to Dismiss the Amended Complaint (Doc. No. 17) is **GRANTED**.

2. Defendants' Motion to Strike Plaintiff's Amended Complaint Docketed at No. 21 (Doc. No. 24) is **DENIED**.

3. All outstanding motions are **DENIED AS MOOT**.

4. The Clerk of Court shall close this case for statistical purposes.

                      BY THE COURT:

                      /s/ Joel H. Slomsky
                      JOEL H. SLOMSKY, J.